**In the Matter of Establishment Inspection of SAMSONITE CORPORATION.**

**Civ. A. No. 91–K–143.**

United States District Court, D. Colorado.

Feb. 21, 1991.

Margaret A. Miller, Office of Sol., Dept. of Labor, Denver, Colo., for the Government.

Roger L. Freeman, Davis, Graham & Stubbs, Denver, Colo., for Samsonite.

**ORDERS ON MOTION TO QUASH INSPECTION WARRANT, AND PETITION FOR CIVIL CONTEMPT**

KANE, Senior District Judge.

On October 25, 1990, this court issued a warrant to inspect the Samsonite production facility in East Denver. This warrant will be referred to as the "second" or "October" warrant. (The first warrant, signed by Magistrate Harvey, was quashed in 90–K–1682 because it was overly-broad.) The second warrant permitted inspection of Samsonite's department 76.

The inspection was triggered by a worker who complained of injuries due to Samsonite's poor ergonomic practices. The injuries or cumulative trauma disorders result from a variety of conditions such as repeated motions, poor working posture, and equipment which requires excessive strain to operate.

On January 23, 1991, a third warrant was issued which permits inspection of an area much broader than was permissible under the second warrant. The alleged hazard is the same: poor ergonomic practices causing injury to workers. As in the 1990 proceeding, Samsonite moves to quash the inspection warrant. OSHA, in turn, defends the warrant and petitions the

court to hold Samsonite in civil contempt. Responding, Samsonite moves, under FRCP 60(b), to set aside the October inspection warrant. Hence, there are three issues:

A. Should the October warrant be set aside for mistake and misrepresentations under Rule 60(b)?

B. Is there sufficient probable cause to support the current, January inspection warrant?

C. Should Samsonite be held in civil contempt?

A. *Rule 60(b) Motion.*

Under FRCP 60(b),

"[T]he court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: 1) mistake ... 3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... 6) any other reason justifying relief from the operation of the judgment."

Because of exigencies, I assume without deciding that FRCP 60(b) applies to OSHA inspection warrants. Samsonite moves to set aside the October warrant based on two grounds. First, Samsonite argues OSHA misrepresented information to the court and magistrate. Second, Samsonite offers what it terms OSHA's post-order misconduct.

On the subject of OSHA's misrepresentations, Samsonite's only avenue for relief is to attack the probable cause underlying the warrant. If probable cause is based on falsehoods, the warrant falls. The attack on the warrant, however, must be limited to the "four corners" of the warrant application before the magistrate. A narrow exception to the rule is found in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Samsonite must make a "substantial preliminary showing" that the warrant application contained deliberate and reckless false statements (or material omissions).

Samsonite's examples of OSHA misrepresentations are sparse. Samsonite claims OSHA misstates the nature of cumulative trauma disorders. Also, Samsonite claims OSHA has promulgated no "standard" which deals with these trauma injuries.

Likewise, Samsonite's examples of OSHA's post-order misconduct are "full of sound and fury." According to Samsonite, OSHA tried to drum up employee complaints through vague or conclusory questions, improperly entered the employee lunchroom, prolonged its inspection of department 76, and wasted the court's resources.

After its critique on OSHA's conduct, Samsonite raises a statutory argument to support its motion to overturn the October warrant. By way of background, I note that OSHA may conduct two kinds of administrative inspections: programed and unprogramed searches. Programed inspections are conducted as part of a comprehensive enforcement scheme. Employers are randomly selected for inspection on neutral criteria. Unprogramed inspections are triggered by "specific evidence" of a violation.

While the Supreme Court has held both kinds of search require probable cause, *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), programed searches require less scrutiny from the magistrate who issues the warrant to inspect the facility. Unprogramed inspections are not initiated by neutral criteria and could become tools of harassment. Hence, the magistrate must "scrutin[ize] the reliability of the 'specific evidence' serving as probable cause for an OSHA warrant" obtained for unprogramed inspections. *Marshall v. Horn Seed Co., Inc.,* 647 F.2d 96, 101 (10th Cir.1981).

Employee complaints, by statute, are "specific evidence" and trigger unprogramed inspections. Congress provided,

[A]ny employees or representative of employees who believe that a violation of a safety or health *standard* exists that threatens physical harm, or that an imminent danger exists, may request an inspection ...

29 U.S.C. § 657(f)(1) (1985) (emphasis added). Upon such complaint, the Secretary of

Labor makes an independent determination that there are "reasonable grounds to believe such violation or danger exists."

Samsonite argues OSHA did not comply with the statute. Although it did not raise the issue during the 1990 proceedings, Samsonite correctly points out there are no work-place ergonomics *standards* for OSHA to apply. Since there is no "imminent danger," it argues it was improper to issue the October warrant because there are no standards on which an employee can base a complaint.

OSHA responds to the lack of standard by citing the general duty provision in 29 U.S.C. § 654(a)(1).

(a) Each employer—

(1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

Samsonite draws a distinction between "standards" and a "general duty." Samsonite cites no cases, however, which deal with situations where no standards exists. It cites one case, *Usery v. Marquette Cement Manuf. Co.,* 568 F.2d 902, 905 (2nd Cir.1977), which declares, in a footnote, a preference for standards "whenever possible."

Results from my own research contradict Samsonite's argument. The Seventh Circuit explained that while standards preempt the general duty clause, "[W]here no promulgated standards apply, the employer is subject to the general duty ... [clause of] 29 U.S.C. § 654(a)(1)." *Brennan v. Butler Lime and Cement Co.,* 520 F.2d 1011, 1017 n. 9 (7th Cir.1975). Hence, the October warrant stands.

### B. *Probable Cause for the January Warrant.*

■ The January warrant authorizes inspection of 16 departments—greatly exceeding the October warrant. In reviewing Magistrate Harvey's January inspection warrant, Samsonite is limited by the same "four corners" rule discussed earlier.

Samsonite argues insufficient probable cause exists to uphold the warrant:

1). The employee complaints were solicited by OSHA and are vague. They come from workers in department 73 and do not justify an exhaustive search.

2). No "standards" exist (see previous discussion) on which to base the inspection.

3). Since there is no standard, OSHA's data cannot support the conclusion that a "hazard" exists at the plant.

4). OSHA's information obtained during its December inspection does not fall under the "plain view" doctrine. Specifically, the inspector's observations of employees wearing splints in the lunchroom is improper and inconclusive.

5). OSHA's "referral" from its own expert is improper.

In response, OSHA argues that the level of probable cause, for administrative inspections, is lower. In *Marshall v. Horn Seed,* 647 F.2d 96 (10th Cir.1981), the court rejected the stricter criminal standard for probable cause in administrative inspections. All OSHA must show is "some plausible basis for believing that a violation is *likely* to be found." *Id.,* at 102 (emphasis added).

Although the standard is low, the warrant's scope is broad. OSHA's warrant application justifies the broad scope in its warrant application by: 1) employee complaints and interviews; 2) review of employee records; and observations during the previous inspection. The affidavit included in the application raises other topics like the increasing number of worker trauma-type injuries

### C. *Civil Contempt Issue.*

■ OSHA requests that Samsonite be held in civil contempt for its failure to honor the January inspection warrant. Samsonite responds by explaining that the shortcomings of the warrant justify its non-compliance.

Samsonite further argues the OSHA inspection agent did not present her credentials to Samsonite's agent in charge. Samsonite argues the warrant was served on

Kimberly Henry who is Samsonite's in-house litigation counsel. Hence, the warrant was not properly executed because Ms. Henry is not the agent in charge. I am not impressed by this *ipse dixit* defense. Samsonite was served properly; the matter is appropriately before the court and no prejudice has been shown.

Contempt power is found in 18 U.S.C. § 401:

> A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> > (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

In *Ager v. Jane C. Stormont Hospital*, 622 F.2d 496 (10th Cir.1980), the court explained, "Civil Contempt is characterized by the court's desire 'to compel obedience of the court order or to compensate the litigant for injuries sustained' ... The remedial aspects outweigh the punitive considerations." *Id.*, at 500. (citations omitted)

Hence, my authority under the contempt power is designed to achieve the twin goals of inducing compliance with the warrant, and compensating OSHA for Samsonite's obstinacy. I am most interested in putting this controversy to rest. Hence, I will reserve ruling on the contempt issue. If there is immediate and full compliance with the warrant, I will consider Samsonite purged of any contempt. Failing such compliance, I will set a hearing to determine the sanctions to be imposed.