**PLUM CREEK LUMBER COMPANY, Plaintiff,**

v.

**Harry C. HUTTON, Area Director, and Fred A. Bruno, Compliance Officer, Occupational Safety and Health Administration, United States Department of Labor, and Ray Marshall, Secretary of Labor, United States Department of Labor, Defendants.**

No. CV 78–8–M.

United States District Court, D. Montana, Missoula Division.

June 29, 1978.

Garlington, Lohn & Robinson, Missoula, Mont., George J. Tichy, Spokane, Wash., for plaintiff.

James Barkley, Denver, Colo., for defendants.

## OPINION

RUSSELL E. SMITH, Chief Judge.

Plum Creek Lumber Company (Plum Creek) owns and operates a lumber mill, a plywood plant, and a medium-density fiber board plant at a location near Columbia Falls, Montana. In the course of its operations it uses machinery which makes noise, and its processes emanate formaldehyde fumes which the employees breath in the normal course of their work. Excessive

noise over extended periods of time can damage hearing, and excessive exposure to formaldehyde fumes over extended periods of time may result in damage to health. There is a noise and fume problem at the Plum Creek Columbia Falls plant, and it is a proper target for testing.

The Occupational Safety and Health Administration (OSHA) heretofore procured a search warrant[1] and under it started to inspect the Plum Creek plant. In the course of the inspection it requested Plum Creek's employees to wear devices which would measure the noise and the fumes to which employees would be subjected in the course of their work. This court issued and later dissolved a temporary restraining order forbidding OSHA from attaching sampling devices to Plum Creek's employees. Following the dissolution, Plum Creek, by written notice placed on its bulletin boards and orally through supervisory personnel, advised its employees not to wear these sampling devices. Sixteen out of 20 employees who were requested to wear the devices refused, and most based their refusal upon the fact that company policy forbade it. Four employees did wear the devices, and there was no proved retaliation. There is no doubt, however, but that the expression of company policy did, and will in the future, hinder OSHA's sampling by employee-carried devices.

The complaint and cross-complaint raise the question—does Plum Creek have a right to forbid its employees from wearing the testing devices in question? The devices were a dosimeter (which is about the size of a cigarette package), which samples noise, and a pump and tube (which is about twice as large), which samples air. Plum Creek's refusal to permit its employees to carry these devices was based on a claimed safety hazard. In light of all of the evidence, it is very questionable whether the wearing of the devices involved actually created a safety hazard. They were small and could be fitting snugly to the body and, to the

1. If there is any controversy as to the sufficiency of the warrant in light of *Marshall v. Barlow's, Inc.*, —— U.S. ——, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), this court, in light of the evidence heretofore received, is now fully equipped to issue any necessary warrants.

knowledge of one witness who had seen much use of them, had not ever caused an accident. However, any device attached to the body may possibly be caught by moving machinery, and there was evidence that any such device could distract an employee's attention from moving machinery. The latter possibility cannot be entirely discounted.

There are other methods of sampling noise and air. In the area method a stationary sampler is placed near a noisy machine or near the source of formaldehyde fumes and measures the level in the area. It does not, of course, move with the employee. In another method, an OSHA employee would wear the device and move with a plant employee, getting the same effect as if the employee were wearing the device. This method is obviously not a substitute time-wise for 20 plant employees wearing 20 devices simultaneously. It does not appear, however, that the devices employed here are specified by law [2] or by the regulations, and as to sound, at least, the dosimeter readings must be corrected before they can be used. In this case, therefore, the sampling devices sought to be used were approved by OSHA inspectors and perhaps by their superiors, but are not required by statute or regulation.

On the basis of all of the evidence, the court finds that the testing devices are valuable tools; that the use of them would be reasonable; that a reasonable employer measuring the risk to employees from noise and air pollution as against the risk from accident would permit employees to wear them. Under the circumstances, should there be an injunction? The answer is "no."

Basically, it comes down to this: Do OSHA inspectors have a right to require that Plum Creek permit its employees to wear sampling devices if the wearing of them creates even a possibility of hazard? Plum Creek is a private employer. It bears all safety risks. The safety factor cannot be eliminated. Plum Creek pays the costs of all industrial accidents. OSHA cannot guarantee that these devices would cause none. Plum Creek might be required by law to accept the minimal risk and to permit the requested sampling, but in the absence of law the OSHA inspectors have no power to make Plum Creek do something simply because the inspectors think it reasonable, and the fact that the court agrees with the inspectors adds neither to OSHA's power nor to the court's.

The court is unable to find from a preponderance of the evidence that Plum Creek intentionally changed conditions existing in the plant for the purpose of impeding the inspection.

Let judgment be entered denying plaintiff any relief on its complaint and defendants any relief on the counterclaim.

This opinion constitutes the court's findings of fact and conclusions of law.

---

2. As to noise at least, other devices are specified. 29 C.F.R. § 1910.95.