In the Matter of The ESTABLISHMENT INSPECTION OF the KELLY–SPRINGFIELD TIRE COMPANY.

Robert B. REICH,* Secretary of Labor, Petitioner–Appellee,

v.

KELLY–SPRINGFIELD TIRE COMPANY, Respondent–Appellant,

and

Gary Kiefer and Duane Bartelt, Respondents.

No. 93–1082.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1993.

Decided Jan. 18, 1994.

---

* Pursuant to Fed.R.App.P. 43(c)(1), Robert B. Reich has been substituted for his predecessor as the Secretary of Labor, Lynn Martin.

**1162**

Eileen M. McCarthy, Dept. of Labor, Appellate Litigation, Donald S. Shire, Sol. Gen., Ann Rosenthal, Dept. of Labor, Office of the Solicitor, Washington, DC, Cyrus A. Alexander, Dept. of Labor, Chicago, IL, Barbara A.W. McConnell (argued), Dept. of Labor, Occupational Safety Health Review, Washington, DC, for petitioner-appellee.

Nancy G. Lischer, Hinshaw & Culbertson, Chicago, IL, James R. Pirages, Thomas H. Riley, Jr. (argued), Hinshaw & Culbertson, Rockford, IL, for respondent-appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and FOREMAN, District Judge.**

---

** The Honorable James L. Foreman, District Judge for the Southern District of Illinois, sitting by designation.

COFFEY, Circuit Judge.

The appellant, Kelly–Springfield Tire Company ("Kelly–Springfield"), appeals the December 11, 1992 order of the United States District Court refusing to quash an administrative warrant and holding Kelly–Springfield in contempt for refusing to submit to the administrative search warrant. We affirm, 808 F.Supp. 657.

## BACKGROUND

On February 3, 1992, OSHA received a brief, written complaint (two sentences) from a Kelly–Springfield employee regarding the working conditions in the plant. OSHA compliance officers interviewed the complaining employee on August 18, 1992 and again on October 15, 1992 to verify that the alleged harmful conditions persisted. OSHA attempted to obtain consent to inspect the plant but consent was refused because Kelly–Springfield would not allow the inspectors to use video cameras. Thus on October 21, 1992 OSHA obtained a search warrant based on the employee complaint. That same day, when OSHA's compliance officers attempted to enter the plant, Kelly–Springfield denied admission to the plant because the warrant was based on an employee complaint that failed to satisfy the statutory requirement of "reasonable particularity." 29 U.S.C. § 657(f)(1). OSHA subsequently withdrew its application for the warrant and interviewed the complaining employee for a third time on October 27, 1992. OSHA obtained additional factual information tending to support the employee's complaint that unsafe conditions were present in the plant such as the fact that the complainant had had surgery for carpal tunnel syndrome (a letter from the employee's physician confirmed this). On November 9, 1992, OSHA appeared before a U.S. Magistrate Judge with

an application for an inspection warrant pursuant to § 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(a). The initial employee complaint along with OSHA's subsequent interviews with the employee revealed the following evidence which was presented to the magistrate in the application for the warrant:

"1. There are approximately 70 employees on the first shift in the passenger tire building whose duties entail the construction of tires on a machine.

2. The construction of tires requires the employees to perform a substantial number of repetitive tasks.

3. Between 10 and 30 tires are built per hour. Each tire requires multiple manual operations performed in sequence.

4. Each manual operation necessitates hand manipulation to produce the finished product.

5. As a result of this multiple hand manipulation, five employees have required surgery to correct carpal tunnel syndrome (CTS).

6. In addition to the surgeries to correct CTS, at least 10 employees have received medical treatment and/or surgery for job related repetitive motion trauma (RMT) of the shoulder, back, neck, elbow, wrist and/or hand. The complainant estimates that between 20 and 25 employees have been off work or on light duty due to job related RMT and that some additional employees are experiencing RMT but have not sought medical attention for fear of reprisal.

7. Complainant alleges that he has observed approximately 20 of the 70 first shift employees wearing braces of some type at various times."

Based on the above-mentioned facts acquired from OSHA's three interviews of the complainant and their expertise in workplace

safety and injuries, OSHA applied for an inspection warrant. Because the alleged violations involved ergonomics,[1] OSHA requested in the warrant the right to videotape Kelly–Springfield employees at their work stations. The warrant was granted but Kelly–Springfield denied access to the plant when OSHA attempted to execute the warrant. On November 10, 1992, Kelly–Springfield moved the district court for an order to quash the warrant arguing that issuance of the warrant violated Kelly–Springfield's Fourth Amendment rights for (1) the information contained in the warrant application failed to establish probable cause, and (2) a warrant allowing the use of a videotape was unconstitutionally overbroad. On the same day, OSHA filed a petition for a rule to show cause why Kelly–Springfield should not be held in contempt. After oral hearings in district court on November 18 and 19, 1992, the district judge issued an opinion denying the motion to quash and denying OSHA's request to hold Kelly–Springfield in contempt. The court subsequently vacated and withdrew the original opinion and on December 9, 1992 issued another opinion denying the motion to quash but finding Kelly–Springfield in contempt of court and imposing a fine in the amount of "$100 for its initial refusal to comply with the warrant and a fine of $1,000 per day for noncompliance with any further execution of the warrant and decision of this court." Kelly–Springfield filed a timely notice of appeal on January 8, 1993. On January 22, 1993, Kelly–Springfield filed a motion with this court requesting a stay pending appeal. On January 29, 1993, Judge Easterbrook denied Kelly–Springfield's motion for stay pending appeal. On February 1, 1993, three OSHA inspectors appeared at the Kelly–Springfield plant with video equip-

1. "Ergonomics is the study of the design of requirements of work in relation to the physical and psychological capabilities and limitations of people; that is ergonomics seeks to fit the job to the person rather than the person to the job. The aim of the discipline is to prevent the development of occupational disorders and to reduce the potential for fatigue, error, or unsafe acts through the evaluation and design of facilities, environments, jobs, tasks, tools, equipment, processes, and training methods to match the capabilities of specific workers." 57 Fed.Reg. 34191, 34199 (Monday, August 3, 1992) (OSHA advance notice of proposed rule making on ergonomics safety and health management).

ment requesting entry to conduct the inspection. Kelly–Springfield once again denied entrance to the inspectors in order to preserve its appeal and incurred a $1,000 fine as set forth in the district court's order. The following day, February 2, Kelly–Springfield permitted the OSHA inspectors began their investigation with video cameras at the Kelly–Springfield plant.

## ISSUES

The appellant challenges the district court's holding of Kelly–Springfield in contempt on two grounds: (1) that the warrant allowing OSHA to videotape was overbroad and, (2) that there was no probable cause to issue the warrant.

## DISCUSSION

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 et seq., has as its purpose "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources...." Id. § 651(b). Under the Act, "Each employer ... shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees...." Id. § 654(a) [hereinafter the general duty clause]. In order to insure compliance with the Act as well as health and safety standards, the Secretary is authorized to enter and inspect workplaces for violations of the same.

### A.

The first issue Kelly–Springfield raises is whether the statute or regulations authorize OSHA to record its inspection on videotape, and if not, whether a warrant authorizing videotaping is unconstitutionally overbroad. As we stated in Burkart Randall Div. of Textron, Inc. v. Marshall, 625 F.2d 1313 (7th Cir.1980), "[t]he ultimate requirement of the Fourth Amendment is that any proposed search or inspection be reasonable." Id. at

1325 (citing Camara v. Municipal Court, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967)). Thus our inquiry is centered on whether videotaping is a reasonable information gathering technique for OSHA to employ when investigating ergonomics violations.

29 C.F.R. § 1903.7 authorizes OSHA "to take or obtain photographs related to the purpose of the inspection [and] employ other reasonable investigative techniques." The Secretary argues that the use of videotape during an inspection is authorized by internal OSHA directives and is a common and well-established OSHA practice. The Secretary also maintains that OSHA need not have specific regulatory authority for each and every one of its inspection and investigational procedures. "[N]ot all delegations of authority 'must be published in order to be effective. Under the provisions of 5 U.S.C. § 552, the requirement for publication attaches only to matters which if not published would adversely affect a member of the public.'" In re Establishment Inspection of Microcosm, 951 F.2d 121, 125 n. 4 (7th Cir.1991) (quoting Hogg v. United States, 428 F.2d 274, 280 (6th Cir.1970)), cert. denied, —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); see also United States Department of Labor v. Kast Metals Corp., 744 F.2d 1145, 1151–53 (5th Cir.1984) (holding that "the APA expressly exempts 'rules of agency organization, procedure, or practice' from the requirements of notice and comment rulemaking" and further that only when a proposed regulation has a "substantial impact" on those regulated should notice and opportunity for comment be provided).

In contrast, Kelly–Springfield contends that OSHA may not implement the practice of videotaping during inspections without first following procedures for notice and comment under the APA. Kelly–Springfield cites In re Establishment Inspection of Metro East Manufacturing Co., 655 F.2d 805 (7th Cir.1981), for the proposition that a warrant is invalid when it permits OSHA to implement an "investigative technique" which is not expressly authorized in OSHA's regu-

lations. In *Metro East,* we suggested that because the term "reasonable investigative technique" is vague, the Secretary of Labor should clarify what it considered to be reasonable: "The responsibility to promulgate clear and unambiguous standards is upon the Secretary. The test is not what he might possibly have intended, but what he said. If the language is faulty, the Secretary has the means and obligation to amend." *Id.* at 810 (quoting *Marshall v. Anaconda Co.,* 596 F.2d 370, 377 n. 6 (9th Cir.1979)). We added that "[i]t would impose no hardship on the Secretary to amend the rules to give 'fair warning' of the types of investigation deemed 'reasonable'." *Id.* at 811. However, in *Metro East* we made clear that the unreasonable aspect of the investigation was for OSHA to require Metro East employees to wear personal sampling devices while performing their employment responsibilities. We went on to state that it would be perfectly reasonable for the OSHA inspectors to wear the personal sampling devices in question while inspecting the facility. *Id.* at 812 n. 13. Thus the court's holding rested on the fact that requiring an employer's workers to wear these sampling devices imposed a burden on the employer that was not adequately set forth in the regulation. On the other hand, the court stated that even though the regulation made no mention of OSHA inspectors wearing personal sampling devices, such a practice was permissible because it is not an intrusion on the employer.

Based on *Metro East,* Kelly–Springfield argues that allowing videotaping of the workplace would impose an unreasonable intrusion on the employer. When pressed at oral argument to explain why videotaping was any more intrusive than employing a camera with a motordrive (clearly authorized by 29 C.F.R. § 1903.7), the appellant only offered that there was a potential for compromising trade secrets. The appeal to protection of trade secrets, however, is a red herring because the court order can be drafted to adequately guard against the dissemination of any trade secrets. Indeed, the Occupational Safety and Health Act and the OSHA regulations also protect employers from dissemina-

tion of privileged information. *See* 29 U.S.C. § 664; 29 C.F.R. §§ 1903.9; 2200.11; 2200.-52(d)(4).

■ In this case it seems unlikely that videotaping employees operating their machines or computers or whatever would be any more intrusive than taking photographs and recording their observations contemporaneously on a tape recording device, which OSHA's regulations expressly authorize. Moreover, the appellant has been unable to direct us to any authority holding that OSHA must have a regulation for every investigative technique that it chooses to employ, in fact OSHA need *not* have express authority for each and every investigative technique. *Metro East,* 655 F.2d at 812 n. 13. Therefore, we hold that OSHA's use of videotaping to investigate work practices and procedures that might be harmful is authorized by 29 C.F.R. § 1903.7 which permits "photographing" and other "reasonable investigative techniques."

### B.

■ The second issue is whether the inspection warrant was supported by probable cause. This circuit recently clarified that in the criminal context, we review a district court's determination of probable cause under the Fourth Amendment for clear error. *United States v. Spears,* 965 F.2d 262, 269 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). In *In re Midwest Instruments Co.,* 900 F.2d 1150, 1153 (7th Cir.1990), we stated that we should apply the same standard of review to the determination of administrative probable cause as we do for criminal probable cause. Thus we review for clear error.

■ Section 8(a) of the Occupational Safety and Health Act, 29 U.S.C. § 657(a), authorizes OSHA to enter and inspect work sites in order to effectuate the purposes of the Act. Pursuant to § 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1), upon receipt of employees' complaints alleging a violation, OSHA, before conducting an inspection, is initially required to make its own independent investigation (discussed *infra*) to determine that there are

"reasonable grounds to believe that such violation or danger exists." *Id.* Once OSHA, after an investigation, determines that there are reasonable grounds to believe a violation or danger exists, OSHA must then proceed to a neutral and detached magistrate to obtain an administrative search warrant. Although the Act does not mention a warrant requirement, the Supreme Court, in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305 (1978), made clear that for nonconsensual OSHA inspections a warrant is necessary. The Court reasoned that a warrant "would provide assurances from a neutral officer that the inspection is reasonable under the Constitution [and] is authorized by statute." The Supreme Court went on to emphasize that: "Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required." *Id.* at 320, 98 S.Ct. at 1824. Probable cause may be based on (1) specific evidence of an existing violation or (2) on a showing that the inspection is part of a reasonable legislative or administrative plan. *Id.* This court has stated that when an administrative search is predicated on an employee complaint, a warrant may issue upon a showing of the relaxed standard of "administrative probable cause." *Burkart Randall Div. of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1318–19 (7th Cir.). A mere allegation of danger from an employee without sufficient documentation or supporting data is insufficient; in order to establish "administrative probable cause," the warrant application must "support[ ] a *reasonable belief* or lead [ ] to a *reasonable suspicion* that the OSH Act or its regulations have been violated." *Midwest Instruments,* 900 F.2d at 1153. Even though the standard for an administrative search is less than that in the criminal setting, "nonconsensual administrative searches of private business must comply with the probable cause requirement of the Fourth Amendment." *Id.* (citing *Michigan v. Tyler,* 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978); *Barlow's, Inc.,* 436 U.S. at 324, 98 S.Ct. at 1827; *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967)).

■ While we recognize that probable cause in the criminal sense is not required, administrative probable cause demands more than the agency merely receiving a complaint and drafting a warrant based solely on that complaint. At a minimum, the statute requires that the agency must establish "reasonable grounds to believe that [a] violation or danger exists...." 29 U.S.C. § 657(f)(1). We believe that this probable cause standard requires OSHA to perform a sufficient investigation to confirm the validity of the complaint, for instance, interviewing the complainant, interviewing other employees, checking medical records when possible, or contacting the employer to allow it to explain and/or respond to the alleged unsafe conditions. These precautions, which will prevent searches based on malicious complaints from a disgruntled employee or group of employees, balance the employer's expectation of privacy—albeit less than that of individuals in their private homes—against the need to provide safe places of employment for the workers of America. An employer has a right to have his worksite free of interruptions and intrusions, i.e. fishing expeditions, from government inspectors who have been unable to demonstrate sufficient probable cause.

■ Kelly–Springfield contends that an employee complaint is insufficient to establish probable cause for a search under the OSH Act's general duty clause because § 8(f)(1), which authorizes inspections based on employee complaints, fails to mention violations of the general duty clause. The appellant tire company goes on to argue that an employee complaint must allege a violation of some specific standard otherwise there is a potential of harassment as employees may subject employers to needless inspections without so much as identifying what standard has been violated. Kelly–Springfield acknowledges that we have authorized OSHA searches under the general duty clause based

on employee complaints, *see, e.g., Midwest Instruments,* 900 F.2d 1150; *Burkart Randall,* 625 F.2d 1313; *In re Establishment Inspection of Gilbert & Bennett,* 589 F.2d 1335 (7th Cir.), *cert. denied sub nom. Chromalloy Am. Corp. v. Marshall,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), but asks us now to specifically consider whether a § 8(f)(1) employee complaint must allege a violation of a standard as opposed to simply alleging a violation of the general duty clause. The appellant relies on the congressional record as evidence that Congress intended employee complaints to allege violations of standards. We are not persuaded by the appellant's citation to isolated portions in the congressional record, *see Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, ——–——, 111 S.Ct. 2476, 2487–91, 115 L.Ed.2d 532 (1991) (Scalia, J., concurring), as the text of § 8(f)(1) of the Act makes clear that employee complaints may give rise to investigations under the general duty clause. Section 8(f)(1) provides for OSHA inspections when an employee complains "that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists...." 29 U.S.C. § 657(f)(1).[2] The general duty clause requires that "[e]ach employer ... shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees...." *Id.* § 654(a)(1). We believe that the language of § 8(f)(1)—"that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists ..."—is inclusive enough to encompass violations of the general duty clause for, in the absence of a specific health or safety standard, an employer is bound by the general duty clause.[3] *Brennan v. Butler Lime and Cement Co.,* 520 F.2d 1011, 1017 n. 9 (7th Cir.1975) (citing *National Realty &*

*Constr. Co., Inc. v. OSHRC,* 489 F.2d 1257, 1261 (D.C.Cir.1973)).

One district court has held that § 8(f)(1) authorizes inspections based on employee complaints alleging general duty clause violations even though that provision fails to expressly mention complaints alleging violations of the general duty clause. *See In re Establishment Inspection of Samsonite Corp.,* 756 F.Supp. 498, 499–500 (D.Colo. 1991). In *Samsonite,* the court held that OSHA could conduct an ergonomics inspection based on an employee complaint even though there is not an ergonomics standard. The court stated "[t]he Seventh Circuit explained that while standards preempt the general duty clause, '[W]here no promulgated standards apply, the employer is subject to the general duty ... [clause of] 29 U.S.C. § 654(a)(1).'" *Samsonite,* 756 F.Supp. at 500 (quoting *Brennan v. Butler Lime and Cement Co.,* 520 F.2d 1011, 1017 n. 9 (7th Cir.1975)). Thus we hold that an employee complaint may allege violations of the general duty clause when OSHA has not yet promulgated a specific standard addressing the complained of harm. Moreover, the warrant requirement, necessitating that a neutral, detached and independent judicial officer determine the existence of probable cause, is intended as a safeguard for employers to protect them against misuse of the complaint procedure.

■ Kelly–Springfield also asserts that the warrant was invalid because the Secretary's warrant application was misleading, *Marshall v. Milwaukee Boiler Mfg. Co.,* 626 F.2d 1339 (7th Cir.1980), and the intent of the employee complaint was to harass the employer, *In re Establishment Inspection of Cerro Copper Products Co.,* 752 F.2d 280 (7th Cir.1985). In *Milwaukee Boiler,* we refused to quash an OSHA inspection warrant even

---

**2.** We note that OSHA has issued a notice of proposed rulemaking for Ergonomic Safety and Health Management, 57 Fed.Reg. 34191 (August 3, 1992), but at present there is not a final rule regulating ergonomics.

**3.** Kelly–Springfield cites the Occupational Safety and Health Review Commission decision *In the Matter of Pepperidge Farm, Inc.,* OSHRC No. 89–0265 (March 26, 1993), as evidence that OSHA

may not enforce ergonomics violations absent an ergonomics standard. The ALJ in *Pepperidge Farm* held only that OSHA could not enforce an ergonomics violation against this specific employer because OSHA failed to set forth evidence of how the hazard could be abated. The holding in no way constitutes a ban on attempting to enforce ergonomics violations under the general duty clause.

though the application for the warrant may have been "materially incorrect or misleading" because a "warrant could only be invalidated if the misrepresentations were 'intentional or reckless.'" *Id.* at 1346 (quoting *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978)). In *Franks*, the Supreme Court stated that in order to contest a warrant "the defendant [must] make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77. The Court added that "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171–72, 98 S.Ct. at 2684–85. Kelly–Springfield points to two misrepresentations in the warrant application as evidence that OSHA sought to mislead the magistrate: (1) the document OSHA represented as the employee complaint was actually supplemented by additional details OSHA obtained from the complainant in subsequent interviews and, (2) that OSHA cited to its regulations as authorizing videotaping of the workplace. The second challenge is easily dismissed for it was not necessary to the finding of probable cause as required in *Franks*. Nor do we see a problem with the first alleged misrepresentation as OSHA merely referred to a document detailing the complaining employee's observations as the "employee complaint." Significantly, the appellant fails to allege that there were any deliberate false statements of material fact or statements made in reckless disregard for the truth such as inflating the number, severity or cause of the injuries incurred. Because the intent of the statute is to make the workplace safe, we do not believe that a mere mislabeling of a document satisfies the *Franks* standard. Thus we reject the appellant's argument that due to alleged misleading statements in the warrant application the

warrant was not supported by probable cause.

■ Finally, the appellant, relying on *Cerro*, 752 F.2d 280, contends that the warrant is invalid because the employee sought to harass his employer and because Kelly–Springfield had undergone a wall-to-wall inspection a mere three months prior to the employee complaint. Reliance on *Cerro* alone is misplaced for *Cerro* did not supplant the requirement in *Franks* that the party opposing the warrant introduce evidence of the affiant's intentional or reckless disregard for the truth. As the Supreme Court stated in *Franks*, "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. The thrust of *Franks* is not the motive of the complainant but the representations of the affiant (the OSHA compliance officer). Thus the magistrate is called upon determine that probable cause existed on the basis of the entire warrant application, OSHA's independent investigation (discussed *supra*), and OSHA's experience in evaluating employee complaints and workplace hazards.

In this instance, Kelly–Springfield put forth argument before the district court that the complaining employee had problems getting along with fellow employees as well as with management and had previously filed at least one charge with the NLRB. OSHA had no knowledge of the employee's history at the time it received the complaint (February 3, 1992); that is why we have stressed in this opinion that OSHA may not rely solely on an employee complaint but must instead make an independent investigation to verify the truthfulness of the allegations. The fact that OSHA sought the initial search warrant on October 21, 1992 supported by little more than a two sentence complaint reflects more of a bureaucratic high-handedness than a reasonable investigation resulting in probable cause for a search. However, OSHA withdrew that warrant application and re-interviewed the employee to ascertain more specific details of ergonomics violations including the nature of the work, the number of employees affected, the number who have had

surgery or medical treatment for carpal tunnel syndrome and repetitive motion trauma. (*See supra* at 3). The subsequent application for a second warrant contained specific data and more detailed information from the employee interview, along with professional articles detailing the severity of carpal tunnel syndrome and a detailed affidavit from the OSHA compliance officer. As we stated above, Kelly–Springfield has not challenged any of the specific and detailed allegations in the warrant application, accordingly, we hold that there was probable cause for the warrant to issue because there is no evidence of intentional or reckless disregard for the truth on the part of the affiant in securing the warrant. *See Franks*, 438 U.S. at 171, 98 S.Ct. at 2684.

### C.

▮▮▮ The final issue is the propriety of the district court's contempt order. The court "assesse[d] Kelly–Springfield a fine in the amount of $100 for its initial refusal to comply with the warrant and a fine of $1000 per day for non-compliance with any further execution of the warrant and decision of this court." We affirm the trial court's imposition of the $1000 civil contempt penalty for failure to comply with the warrant because as we held above, the warrant was valid and it is well within the court's authority to impose a monetary penalty to secure compliance with its ruling. *Microcosm*, 951 F.2d at 124. Regarding the $100 penalty, Kelly–Springfield argues that it was an unconditional punitive fine and thus an impermissible criminal penalty in a civil proceeding. While we agree that the $100 fine was punitive in nature as it related to past conduct (i.e., the appellant's refusal to permit OSHA to inspect the plant on November 9, 1992), the $100 fine need not be reversed because Kelly–Springfield received more than adequate notice (via the government's motion to show

cause) and had an opportunity to be heard through counsel (via the filing of written briefs and two day oral hearing before U.S. District Judge). Thus due process has been satisfied. *See* Fed.R.Crim.P. 42(b).

### CONCLUSION

We affirm the district court's finding that the warrant was supported by probable cause and was not overbroad. Likewise, we affirm the finding of Kelly–Springfield in contempt of court.

AFFIRMED.

FOREMAN, District Judge, concurring.

I concur in affirming the district court's decision but write separately to underscore our holding with respect to the government's obligations under the fourth amendment. As the majority opinion points out, OSHA need not demonstrate "probable cause in the criminal sense" to obtain a warrant for an administrative inspection. However, the agency still bears a substantial burden of showing that it has a *"reasonable belief* or ... a *reasonable suspicion* that the OSH Act or its regulations have been violated." *Establishment Inspection of Midwest Instruments Co.*, 900 F.2d 1150, 1153 (7th Cir.1990) (emphasis in original).

Where the agency's warrant application is based upon an employee complaint, the agency's obligations are similar to those of a police officer who is relying upon a tip from an informant—i.e., the agency must investigate the reliability of that information. *See Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (stating that warrant application must be supported by a factual showing that is " 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.").[1] Thus, just as a police

---

1. I recognize that this court has held that an administrative warrant application need not set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person. *See, e.g., In re Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1339 (7th Cir.), *cert.*

*denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). However, that does not relieve OSHA of its statutory obligation to "determine[ ] that there are reasonable grounds to believe that [a] violation or danger exists...." 29 U.S.C. § 657(f)(1). Therefore, even though the court does not require the agency to set forth all of the underlying circumstances so that the magistrate judge can make an independent determination of

officer must ensure that an informant's tip is not fabricated or embellished by improper motives such as revenge or the receipt of police benefits, OSHA must ensure that the employee's complaint was not fabricated solely for purposes of harassing the employer. *See Establishment Inspection of Cerro Copper Products Co.,* 752 F.2d 280, 283 (7th Cir.1985). Accordingly, our decision today makes it clear that OSHA cannot rely solely upon the employee complaint to support its request for a warrant. Instead, the agency has an affirmative duty to investigate the validity of the complaint.[2]

In the case at bar, Kelly–Springfield alleged that the OSHA's warrant application was improperly based upon a complaint from an employee with a history of making complaints to federal agencies and for exhibiting conduct aimed at harassing co-workers and managers. But Kelly–Springfield has not shown that the basic information provided to OSHA by this employee was inaccurate. In a hearing before the district judge, the company argued that there were several inaccuracies in the information set forth in the warrant application. Transcript of Proceedings, Nov. 19, 1992, at 27. However, the company's objections did not refute the substance of the application—i.e., the repetitive

nature of the work being performed by the employees and the fact that five employees have had surgery for carpal tunnel syndrome, ten employees have received medical attention for other types of job-related repetitive motion trauma (RMT), and an estimated 20 to 25 employees have been off work or are on light duty due to job-related RMT.[3] Based upon this information, the district court correctly found that OSHA had probable cause to conduct an inspection.

---

the veracity of the OSHA's informant, the OSHA officer still has a duty to investigate the reliability of the information before swearing to it under oath in the warrant application. If the officer has intentionally or recklessly disregarded the truth of the information provided to support the warrant request, the warrant application would be subject to impeachment under *Franks.*

**2.** This is not to say that the government can never rely upon information when it comes from a disgruntled employee who may be motivated by a desire to harass the employer. Our holding today means only that the government must attempt to ensure the veracity of the information in the employee's complaint—regardless of the employee's motive.

In arguments before the district court, counsel for the government asserted that OSHA's informant need not be a credible person. Transcript of Proceedings, Nov. 19, 1992, at 34–38. Based upon the analysis set forth above, I agree with that statement up to a point; but counsel went too far when he stated that "if this employee is crazy, it doesn't matter." *Id.* at 34, 36. This type of statement smacks of bureaucratic high-handedness, as suggested in the majority opinion. Under our holding today, an OSHA officer

would not have "reasonable grounds to believe that [a] violation or danger exists" if the officer's request for a warrant is based upon nothing more than the statements of a crazy person. Such a warrant request would be appropriately challenged under *Franks* as a reckless disregard for the truth on the part of the affiant.

**3.** The company argued that the number of carpal tunnel surgeries was insignificant in comparison to the company's entire work force. But this argument ignores the other incidents of job-related RMT. The company also argues that only 14 employees plant-wide were on light duty work. However, this argument misconstrues the allegations in the warrant application. The application does not state that 20 to 25 employees are currently on light duty work; rather, it states that the complainant *estimates* that 20 to 25 employees have either *been off work* or are on light duty. In short, the company has not shown any significant inaccuracies in the complaining employee's information. Accordingly, the company has not met its burden of showing that OSHA's officer had an intentional or reckless disregard for the truth of the information set forth in the warrant application. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.